IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| LAKENDRA NORTON, | |
| Movant, | CIVIL ACTION NO.: 5:19-cv-99 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No.: 5:17-cr-12) |
| Respondent. | |

### REPORT AND RECOMMENDATION

Movant Lakendra Norton ("Norton"), who is currently housed at the Federal Prison Camp in Alderson, West Virginia, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence. Doc. 1. The Government filed a Response. Doc. 5. For the reasons which follow, I **RECOMMEND** the Court **DENY** Norton's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Norton *in forma pauperis* status on appeal and a Certificate of Appealability.

### BACKGROUND

Norton was charged and indicted, along with 18 co-defendants, for conspiracy to possess with intent to distribute and to distribute controlled substances involving 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(a)(A), and (b)(1)(B) (count 1); possession with intent to distribute 50 grams or more of methamphetamine and quantities of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and (b)(1)(B) (count 37); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (court 38); and maintaining a premises for distribution of controlled substances, in violation of 21 U.S.C.

§ 856(a)(1) (count 40).  United States v. Norton, 5:17-cr-12 (S.D. Ga.) ("Crim. Case"), Doc. 145. Norton's counsel, Clint Lott, was able to negotiate a plea agreement with the Government whereby Norton agreed to plead guilty to a lesser included offense of conspiracy to possess with intent to distribute a quantity of methamphetamine (count 1 of the superseding indictment).  Crim. Case, Doc. 420.  In exchange, the Government agreed to: not object to a recommendation Norton receive a three-level reduction for acceptance of responsibility; determine whether Norton's cooperation qualified as substantial assistance to warrant the filing of a motion for downward departure or reduction in sentence; move the Court to dismiss the remaining counts against Norton; and not file a 21 U.S.C. § 851 enhancement against Norton.  Id. at 2–3.

      The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing.  At the outset of this hearing, Judge Wood informed Norton the purpose of the hearing was to make sure she understood the case pending against her, all the rights she was giving up if Judge Wood accepted her plea, was pleading guilty because that was what she wanted to do after consultation with Mr. Lott, and there was a factual basis for the plea.  Crim. Case, Doc. 859 at 2–3.  During the plea hearing, Task Force Officer ("TFO") Joseph Butler with the Federal Bureau of Investigation Coastal Georgia Violent Task Force provided the factual basis for the plea, Norton admitted to the truth of Butler's testimony, Judge Wood accepted Norton's plea, and Judge Wood directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR").  Id. at 19–22.  Judge Wood later sentenced Norton to 60 months' imprisonment.  Crim. Case, Doc. 670.

      Norton has now filed a § 2255 Motion to challenge her sentence, and the Government filed a Response.  Docs. 1, 5.  This matter is fully briefed and ripe for the Court's review.

**DISCUSSION**

Norton asserts Mr. Lott provided ineffective assistance during the plea proceedings by failing to inform Norton her relevant conduct would include a firearm enhancement and that relevant conduct involved conduct of other persons.  Doc. 1 at 4, 5.  In addition, Norton asserts the Court erred by sentencing her for a drug quantity she did not admit to or found to apply to her.  Id. at 6.  Relatedly, Norton contends her base offense level was calculated incorrectly and her criminal history category does not comport with the Sentencing Guidelines.  Id. at 8.  Norton seeks to be resentenced with a base offense level of 16 and a criminal history category of II or I, resulting in a Guidelines' range of 24 to 30 months' imprisonment.  Id. at 12.

**I.     Whether Counsel Rendered Ineffective Assistance**

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001).  This right also extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) her counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) she suffered prejudice as a result of that deficient performance.  Strickland, 466 U.S. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill, 474 U.S. at 56.  There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to

3

'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, [a court] need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that she was prejudiced by that performance." Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States,

Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112.

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances. Bousley v. United States, 523 U.S. 614, 621 (1998). A § 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack." United States v. Broce, 488 U.S. 563, 569 (1989) (finding constitutional defendant could not raise double jeopardy claim on collateral attack following guilty plea). Pertinently, a "knowing and voluntary guilty plea waives all non-jurisdictional, pre-plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992). As discussed below, Norton's contentions Mr. Lott was ineffective are precluded by Norton's knowing and voluntary plea agreement.[1]

---

[1] Despite this determination, the Court addresses the relative merits of Norton's ineffective assistance claims for the purpose of completeness.

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and her plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). "However, a defendant's guilty plea is not knowing and voluntary if [s]he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases." United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary[,] intelligent choice among the alternative courses open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). To determine whether a guilty plea was made knowingly and voluntarily, a court must specifically "address . . . three 'core principles,' ensuring that a defendant (1) enters [her] guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Lambert, 777 F. App'x 336, 339 (11th Cir. 2019) (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. Cannon v. Jones, Case No. 3:15CV213, 2017 WL 990583, at *6 (N.D. Fla. Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 988663 (N.D. Fla. Mar. 13, 2017) (citing McMann v. Richardson, 397 U.S. 759, 770–71 (1970)).

In addition, a defendant must live with what she has told a court under oath. A defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated, "[T]he representations of

6

the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. Id.

Norton and Mr. Lott were able to negotiate a plea agreement with the Government whereby Norton agreed to plead guilty to a lesser included offense of conspiracy to possess with intent to distribute a quantity of methamphetamine. Crim. Case, Doc. 420. In exchange, the Government agreed to: not object to a recommendation Norton receive a three-level reduction for acceptance of responsibility; determine whether Norton's cooperation qualified as substantial assistance to warrant the filing of a motion for downward departure or reduction in sentence; move the Court to dismiss the remaining counts against Norton; and not file a 21 U.S.C. § 851 enhancement against Norton. Id. at 2–3. The plea agreement set forth the statutory elements and factual bases of the offense to which Norton was pleading guilty. Id. at 4. Norton agreed she was guilty of the offense. Id. at 5. Additionally, Norton agreed no one had promised her a particular sentence or range and the Court could impose a sentence up to the statutory maximum sentence of no more than 20 years' imprisonment but would look to the Sentencing Guidelines and sentencing factors of 18 U.S.C. § 3553(a). Id. at 1, 5–6. Further, Norton affirmed she had read and reviewed the agreement with Mr. Lott, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate. Id. at 15.

Norton appeared before Judge Wood for her Rule 11 proceeding. Judge Wood addressed Norton and informed her the purpose of the hearing was to ensure she understood the case pending against her, she understood all of the rights she was waiving or giving up by pleading

guilty, there was a factual basis for the guilty plea, and, after consultation with Mr. Lott, pleading guilty was what Norton wanted to do. Crim. Case, Doc. 859 at 2–3. Judge Wood inquired whether anyone had made, leaned on, or pushed Norton to offer to plead guilty, and she said no one had done so and pleading guilty was what she wanted to do. Id. at 3.

After Norton was sworn in, Judge Wood told Norton she did not have to plead guilty. Id. at 6. Judge Wood also told Norton, if she chose to persist in her not guilty plea, she would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout the trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on her behalf; and testify herself or remain silent. Id. at 6–7. However, Judge Wood cautioned Norton she would be waiving these rights if she pleaded guilty and Judge Wood accepted that guilty plea. Id. at 7. Norton stated she understood and had no questions about the waiver of her rights. Id. When Judge Wood asked Norton how far she had gone in school, Norton informed her she graduated high school and had done some course work at Waycross College. Id. at 4. Judge Wood inquired whether Mr. Lott and Norton went through the documents involved in the case, including the superseding indictment and plea agreement, and Norton said she and Mr. Lott had gone over the facts and law of his case, the superseding indictment, and the plea agreement together. Id. at 8. Norton stated Mr. Lott had spoken with her in general terms about the advisory Sentencing Guidelines, had no questions about the Guidelines, and affirmed she was satisfied with Mr. Lott's representation and had no complaints whatsoever. Id.

Judge Wood reviewed the superseding indictment with Norton, the essential elements of the crime to which she was pleading guilty and the other counts of the indictment naming her, and what the Government would have to prove on essential elements. Id. at 8–11. Judge Wood

advised Norton to convict her of the lesser included offense of count 1 of the indictment, the Government would have to prove beyond a reasonable doubt the three essential elements: (1) two or more people in some way agreed to try to accomplish and shared an unlawful plan to possess a quantity of methamphetamine, a Schedule II controlled substance; (2) Norton knew of the unlawful purpose of this plan and willfully joined it; and (3) the object of the unlawful plan was to possess with the intent to distribute methamphetamine. Id. at 11. By pleading guilty, Judge Wood noted Norton was admitting the essential elements of the crime to which she intended to plead guilty were satisfied. Id. Judge Wood advised Norton of the maximum sentence she could impose, which was not more than 20 years in prison. Id. Moreover, Judge Wood explained to Norton that, in imposing a sentence upon her, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553. Id. at 12. Judge Wood also stated she would consider some "major factors," including Norton's criminal history, her role in the offense, and whether she told the truth and accepted responsibility. Id. Norton stated she understood and had no questions. Id. Judge Wood inquired whether anyone had promised Norton an exact sentence, and Norton stated no one had, to which Judge Wood responded that was good because all anyone could provide Norton was his "best guess," which was not binding upon her. Id. at 12–13. Norton verified Mr. Lott had her permission to negotiate with the United States to reach a plea agreement. Id. at 13.

Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement. AUSA Marcelo Mateo stated the material provisions were:

> [T]he Government will not object to a recommendation from [U.S.] Probation that the defendant receive a full three-level reduction in offense level for acceptance of responsibility pursuant to the [S]entencing [G]uidelines. The defendant agrees to provide full, complete, candid[,] and truthful cooperation to the Government, and it is up to the Government in its sole discretion to decide whether this cooperation

9

> qualifies as substantial assistance that warrants the filing for a downward departure or reduction of sentence.
>
> At sentencing, the Government will then move to dismiss the remaining counts of the superseding indictment that remain pending against this defendant.
>
> There are also some waivers contained in the plea agreement, the first being waiver of appeal with three exceptions. There's also that the defendant entirely waives her right to collaterally attack her conviction and sentence on any ground and by any method with only one exception.

Id. at 13–14. Judge Wood asked Norton if AUSA Mateo's summarization of the plea agreement was consistent with the plea agreement she signed, and Norton stated it was. Id. at 15. Norton also stated she read the plea agreement before she signed it, and Norton affirmed no one had made her any promises regarding the outcome of her case, other than the provisions contained in the plea agreement. Id. Judge Wood also discussed the appeal waivers contained in the plea agreement, including the limited exceptions if: she were to sentence Norton above the statutory maximum; she were to sentence Norton above the advisory Guidelines range, as found by her; and the Government were to file a direct appeal. Id. at 15–16. Judge Wood also noted the plea agreement contained a collateral rights waiver, which stated, "Defendant entirely waives her right to collaterally attack her conviction and sentence on any ground and by any method[,] including but not limited to a 28 [U.S.C. §] 2255 motion. Now, there is one exception to that waiver, and that is . . . you do retain the right to collaterally attack based on a claim of ineffective assistance of counsel." Id. at 16.

Judge Wood then asked Norton whether she wished to still plead guilty to the lesser included offense of count 1 of the superseding indictment because she was in fact guilty of that count, and she answered in the affirmative. Id. at 17. Judge Wood also asked Norton whether she understood the rights and privileges she was waiving if she accepted her plea, and Norton

said she did.  Id.  Judge Wood determined Norton's offer to plead guilty was made "knowing[ly]" and "voluntar[ily]."  Id. at 18.  Norton agreed.  Id.

The Government provided a factual basis for Norton's plea of guilty by calling TFO Butler to testify.  Id.  TFO Butler stated he was familiar with Elmo Robinson and Cedric King, two of Norton's co-defendants, and the investigation into these two men uncovered a lot of crystal methamphetamine being distributed through Ware County using various people.  Id. at 19.  TFO Butler stated he and other law enforcement officials obtained search warrants and wiretaps and conducted controlled buys and physical surveillance.  Id. at 20.  TFO Butler testified Norton was a runner, or someone who would deliver crystal methamphetamine, for LaShadre Smith, one of Robinson's main suppliers.  Id. at 20–21.  TFO Butler also testified Norton was captured on a wiretap and attributed approximately nine ounces of methamphetamine to Norton based on the wiretap.  Id. at 21.  In addition, TFO Butler stated a search warrant was executed at Norton's residence, "which also was evidence of the conspiracy and [Norton's] role[.]"  Id.  Norton admitted to the truth of TFO Butler's testimony.  Id. at 22.  Judge Wood was "satisfied" there was a factual basis for a plea, accepted Norton's plea, and adjudged her guilty of the lesser included offense of count 1 of the superseding indictment.  Id.  Judge Wood advised Norton a probation officer would prepare a PSR, and the Court would schedule a sentencing hearing after the PSR was disclosed to the Government and to Mr. Lott.  Id.

To be clear, Judge Wood informed Norton at the outset of the initial Rule 11 hearing the purpose of the hearing was for her to understand the case pending against her, the rights she was waiving by pleading guilty, the factual basis for her plea, and whether pleading guilty was what Norton wanted to do after consultation with her attorney.  Id. at 2–3.  After telling Norton she

would be asked to swear under penalty of perjury to tell the truth at her Rule 11 hearing or the Government could prosecute her for perjury, Norton averred no one was forcing her to plead guilty and pleading guilty was what she wanted to do. Id. at 3. Judge Wood discussed the specific rights Norton was afforded if she chose to persist with a not guilty plea, and Judge Wood advised Norton she would waive those rights if she pleaded guilty and Judge Wood accepted her plea. Id. at 6–7. Norton stated she had spoken with Mr. Lott about the facts and law of her case, including the plea agreement, superseding indictment, and the sentencing Guidelines in general terms. Id. at 8. Norton verified AUSA Mateo's summary of the plea agreement was consistent with the plea she had signed. Id. at 15. Judge Wood asked Norton whether she wanted to plead guilty because she was, in fact, guilty of a lesser included offense of count 1 of the superseding indictment, and she answered in the affirmative. Norton declared she understood the rights and privileges she was waiving by pleading guilty and proceeded to do so. Judge Wood determined Norton's guilty plea was knowing and voluntary. Id. at 18. TFO Butler then provided a factual basis for Norton's plea, and Norton agreed with the Government's factual basis. Id. at 22. Judge Wood accepted Norton's plea and adjudged her guilty of the lesser included offense of count 1 of the superseding indictment. Id. In so doing, Judge Wood addressed the "three core principles" required during a Rule 11 hearing. Lambert, 777 F. App'x at 339.

Norton's assertion Mr. Lott was ineffective during the plea phase for failing to inform her relevant conduct included a firearm enhancement and the conduct of others is belied by the record before the Court and is without merit. Norton stated during the plea hearing she and Mr. Lott had discussed the law and facts of this case and the Sentencing Guidelines, at least in general terms, and Norton had no questions. The record before the Court, including the statements Norton made under oath and under penalty of perjury, belies Norton's contentions in

her Motion as to Mr. Lott's assistance during the plea process. In addition, Norton makes nothing more than conclusory statements in this regard. In fact, even if Mr. Lott had not explained relevant conduct included a firearm and other people's conduct and this failure amounted to deficient performance, Norton fails to explain how she was prejudiced by this performance. Thus, Norton has not satisfied either Strickland prong. For these same reasons, to the extent Norton could be considered to make any argument Mr. Lott's alleged ineffective assistance rendered her plea unknowing and involuntary, Norton's assertions would fail. As discussed, Judge Wood specifically found Norton's plea was knowing and voluntary, and Norton offers nothing to refute this finding. Norton is not entitled to her requested relief, and the Court should **DENY** this portion of her Motion.

## II.     Whether the Court Erred in Attributing Others' Conduct at Sentencing

Norton asserts the Court erred by attributed to her drug quantities not found and to which she did not admit. Doc. 1 at 6. Norton contends her base offense level was calculated incorrectly and her criminal history category does not comport with the Sentencing Guidelines. Id. at 8. Norton seeks to be resentenced with a base offense level of 16 and a criminal history category of II or I, resulting in a Guidelines' range of 24 to 30 months' imprisonment.[2] Id. at 12. The Government responds Norton procedurally defaulted these claims by not raising them on

---

[2] Norton offers nothing to support her assertion her base offense level should have been 16 rather than 30 the United States Probation Officer attributed to her. PSR, ¶¶ 14, 20. Norton does mention she should not be responsible for "ghost dope," doc. 1 at 6, which the Court assumes Norton's meaning is she should not have been responsible for other people's drug offenses or drugs not actually seized. However, Norton was charged with conspiracy and was advised all relevant conduct would be considered in fashioning her sentence. While the Court was unable to find controlling precedent from the Eleventh Circuit Court of Appeals, it notes the Seventh Circuit Court of Appeals "does not recognize the defense of sentencing manipulation." See United States v. Council, Case No. 1:14-CR-14-5, 2021 WL 681070, at *4 (N.D. Ind. Feb. 22, 2021) (rejecting argument the amount of cocaine used to calculate sentence inaccurate because it was "ghost dope[]"). Moreover, there was plainly an adequate basis for the Court to attribute the amount of drugs to Norton than it did.

13

appeal, she waived these grounds through her plea agreement, and her claims are without merit.[3] Doc. 5 at 8.

"Relevant conduct under the guidelines need not be charged to be considered in sentencing, and it includes all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." United States v. Jokhoo, 806 F.3d 1137, 1141 (8th Cir. 2015) (quoting United States v. Radtke, 415 F.3d 826, 841 (8th Cir. 2005)). A court considering relevant conduct "must consider 'all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully cause by the defendant.'" United States v. Tillman, 2:17-CR-8, 2017 WL 2728209, at *3 (S.D. Ga. June 23, 2017) (quoting U.S.S.G. § 1B1.3(a)(1)(A)). In addition, the base offense level "shall be determined on the basis of . . . all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]" Id. (quoting U.S.S.G. § 1B1.3(a)(2)). "Courts have consistently held . . . conduct forming the basis of counts . . . dismissed from the indictment pursuant to a plea agreement[] is relevant conduct for sentencing." McReed v. United States, Nos. CV113-121, CR 111-302, 2014 WL 1238037, at *8, n.4 (S.D. Ga. Mar. 21, 2014) (citing United States v. Watts, 519 U.S. 148, 149–53 (1997) (holding sentencing court may consider facts relating to other charges, even ones of which defendant has been acquitted); United States v. Kennedy, 326 F. App'x 509, 511 (11th Cir. 2009) (relevant conduct for sentencing included quantities of drugs that were subject of dismissed counts of indictment); and United States v. Karam, 37 F.3d 1280, 1285 (8th Cir. 1994) ("[A] sentencing court may consider, as relevant conduct under U.S.S.G. § 1B1.3, the conduct charged in dismissed counts.")).

---

[3] It is clear Norton has procedurally defaulted or waived these grounds. However, Norton's assertions are sufficiently related to Norton's ineffective assistance claims the Court will address the relative merits of Norton's assertions.

Under the Guidelines, the Court was to consider all of Norton's relevant conduct, even the dismissed counts of the indictment, which would have included the conspiracy and firearm counts. In addition, the plea agreement Norton and the Government reached informed her the Guidelines calculation would take into account all of her relevant conduct, not just the facts underlying the count to which she was pleading guilty. Crim. Case, Doc. 420. What is more, Norton stated at the Rule 11 hearing she understood the Court could impose a sentence upon her up to the statutory maximum, which was 20 years' imprisonment. Crim. Case, Doc. 859 at 11. Further, Judge Wood informed Norton she would consider Norton's role in the offense, or the relevant conduct. Id. at 12. Mr. Lott filed a sentencing memorandum on Norton's behalf and recounted Norton's behavior on bond—which was exemplary—and her abusive and threatening relationship with LaShadre Smith. Crim. Case, Doc. 658. Although Norton denied having knowledge firearms and drugs were in her residence, she admitted these items were seized from her home and agreed "said contraband was applicable to her sentencing." Id. at 2. The Government made a § 5K1.1 motion on Norton's behalf. Crim. Case, Doc. 858. While the Court accepted the Probation Office's recommended advisory Guidelines' range, Judge Wood sentenced Norton to 60 months' imprisonment after hearing from the Government and Mr. Lott at sentencing and in consideration of sentences she may have imposed on other defendants in this case.[4] Id. at 3, 15–16. Thus, the Court correctly included conduct underlying the dismissed

---

[4] Norton's total offense level was 31 with a criminal history category of II, resulting in an advisory Guidelines' range of 121 to 151 months' imprisonment. PSR, ¶¶ 20–22, 28–30, 32, 34, 61. However, based on the Government's § 5K1.1 motion, the recommended sentence was 91 months' imprisonment. Crim. Case, Doc. 658 at 1; Crim. Case, Doc. 858 at 2, 11. In addition, the Government stated during Norton's sentencing, after further consideration and discussions after the filing of the § 5K1.1 motion, it thought a sentence of less than 91 months would be appropriate. Crim. Case, Doc. 858 at 11–13.

15

counts in assessing a proper sentence for Norton. The Court should **DENY** this portion of Norton's Motion.[5]

### III.  Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Norton leave to appeal *in forma pauperis*. Though Norton has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[5]    Norton filed a "motion" in her criminal proceedings, asking the Court to waive her firearm enhancement. Crim. Case, Doc. 835. Judge Wood informed Norton the Court intended on re-characterizing her "motion" as a § 2255 motion. Crim. Case, Doc. 838. As Norton lodged no objection to the Court's re-characterization and filed the instant § 2255 Motion in response to that Order, the Court should **DENY as moot** Norton's "motion." Crim. Case, Doc. 835.

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Norton's Motion and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Norton a Certificate of Appealability, Norton is advised she "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there

are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Norton's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Norton *in forma pauperis* status on appeal and a Certificate of Appealability.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 20th day of December, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA